Our next case is Novartis v. MSN, 2024-2211. Ms. Maynard. Thank you, Your Honor. May it please the Court again? My name is Deanne Maynard. I'd like to reserve three minutes for rebuttal. So this preliminary injunction appeal involves the 918 patent, which claims an amorphous complex, which is called TVS for short. Now, this case is going to trial in a few weeks. Yes, sir. December 9th, the trial starts on December 9th. The patent has, as we mentioned earlier, two years of life left, yet MSN wants to launch before next month's trial prematurely. And the District Court refused to enjoin them by adding limitations to the plain claim language that aren't there and by clearly misinterpreting the evidence. So I'd like to start with the claim construction, because Claim 1 is straightforward. It just recites an amorphous form of a compound and then defines the TVS complex. Amorphous is almost an amorphous term. Well, the District Court recognized, and everyone agreed, this is an A20. The District Court recognized that a person of skill in the art recognizes an amorphous form when they know, when they have it, and can discern it from other forms. So is it your view that if you've got everything entirely crystalline and you've just got traces of amorphous, that would bring you within the claim language? The amorphous part of what you described would infringe this claim, and that's consistent with this Court's case law. Smith-Klein says trace amounts of a drug substance will infringe a claim on that drug substance. Well, but even assuming you are correct, and I don't know whether you are or not, the District Court here made findings that are reviewed for abuse of discretion, including findings, as I understood them, that weighing the testimony of the experts, you hadn't established any amorphous, even amorphous traces. And the District Court clearly erred in reaching that conclusion. And so, well, before you leave the claim construction, we would ask that you correct and address the claim construction before next month's trial, because that's obviously, like, better for everyone. The claim construction is predominantly, right? Predominantly amorphous? Yes, Your Honor. He added a predominance requirement to this claim that's just not supported by the intrinsic record or the claim language. And predominant, that's the error that you see in the construction? That's right. Because there's no need, everybody agrees that a person of skill in the art can recognize when they have an amorphous form of TBS. There's no need to compare it to something else. Nothing in the claim language would support such a comparison. But does this cover Ernesto, the product? The product is crystalline, right? Our product in Tresto, we have not listed in this orange book, so we don't claim that we practiced this patent. But this Court has made clear under Trebo that you can get an injunction even if you don't practice a patent. But we do claim it's in their product. Can I ask you, just, I don't want to skip around too much if you have more to say on likelihood of success on the merits, but I don't understand irreparable harm if you're not practicing, if you're not practicing, this claim doesn't practice the patent because all of your evidence about harm had to do with the effect on Ernesto and the market for Ernesto. And that's, that's not even listed here in issue. Why is that evidence relevant to the irreparable harm inquiry? So because this Court has held in Trebro that you don't need to practice the patent to show irreparable harm. And the reason we will have irreparable harm and the reason it's caused by their using our invention here is because they're going to, they want to enter the market to compete head-to-head with Novartis in the market that we created using our invention of this patent. And this Court has held that that is irreparable harm. We've, they're going to, they want to launch and use, under, on the facts here. But the irreparable harm, you say, all goes to your sales of Ernesto. Of Entresto. Entresto, I'm sorry. Yeah, that's okay. So the, the, the harm, but that's what they want to market, a competing product to Entresto. And, and the record shows that under the process that they proposed to the FDA, they can't make their competing product without infringing the patent. The way that they've chosen to make their product, our evidence shows, is going to include amorphous TBS. So what they want to do is use the patent and invention in the 918 to, to, to, to launch prematurely their generic product of Entresto to compete with us. And their generic product is going to include an amorphous TBS which infringes this patent. And this Court has held under those circumstances that we, we, we both have, it's a nexus and we both have irreparable harm in the market for Entresto as a result of that. Now, the specification says that the invention may be in a crystalline, partly crystalline, amorphous or polymorphous state. And so what is claimed is amorphous. In other words, not partly crystalline, crystalline, just amorphous. Exactly, Your Honor. And that, that's why there was no need to add any language to the claim. The claim is clear on its face. And Claim 2 makes that point clear because Claim 2 claims a pharmaceutical composition comprising. And so if there was a need to look out and look at some sort of hole, that shows, you know, that the Claim 1 doesn't do that. The question is just do you have amorphous TBS? And in Claim 2 also reinforces that amorphous TBS can be one component in another mixture to your example, Judge Prost. And it would still infringe. But the Court found a lack of proof here. And isn't, isn't that based clearly around the standard? Well, once you correct the claim construction, Judge Lurie, his error on assessing the evidence is clear. Novartis is the only party that did tests that could show whether or not their finished product contains amorphous TBS. The only one who tested the finished products for amorphous TBS, we found amorphous TBS. The District Court faulted that for only one reason and their expert shows that reason is wrong. And so I, I can walk you through where that is. So, so our expert did a Raman, tested their finished products, which is of course what we accuse of infringement, and found amorphous TBS by, by doing what you, what you need to do to look for amorphous TBS. He compared it to a reference spectrum for amorphous TBS. What were the facts shown here in terms of the percent amorphous? Well, we don't, we didn't dispute that, that there might be a small amount of amorphous. But as I said to Judge Prost, any amount of amorphous infringes this claim. One percent of amorphous and the rest crystalline would infringe? Well, so under, well, that just proves why the District Court's construction is wrong, because nothing the claim requires like looking at outside the context of what you're, what you're claiming is amorphous. But, but if you're getting, if you're getting to the District Court's construction and are showing under the District Court's construction, we also showed, and we were also the only ones that did the appropriate testing to answer the question, that their complex is not a complex at all. Their... But the specification distinguishes amorphous from partially crystalline. So if this is only, the accused is only slightly amorphous, what is it mostly, partially crystalline? But the spec indicates that's different from amorphous. So the, but the spec, I think the spec actually shows something different, Your Honor, which is the spec actually shows that amorphous is its own thing, and the parties agree that partially crystalline includes both some amorphous and some crystalline, so to answer, so that's all you have to have. That's why the court said predominantly. But that, there's nothing to warrant reading that into the claim, Your Honor, because the claim requires only amorphous, and the spec recognizes that amorphous is a thing. Leaving amorphous aside, look at Appendix 4 and 5 of the District Court's opinion. I read this very long paragraph analyzing the details of both experts' opinions to conclude not that it meets the claim construction that the District Court came up with, but Novartis has not shown it's likely to succeed in proving MSM's product contains amorphous TBS. And that's the last sentence, too. I found Novartis has not met its burden likely to succeed in proving MSM's and ANDA products contain amorphous TBS. Why is it unless you can show, you would agree, unless you can show clear error in those findings, you lose? And I can show clear error. So only our expert did the test for whether or not their final products have amorphous TBS. That was Dr. Matsker's testing. The District Court, as you point out, Judge Gross, the only fault that the District Court found with that testing was that he should have compared his Raman spectra to the reference spectra for MSM's isolated API. That's the only objection the District Court had. That objection would be, that test would be, that comparison would be beside the point because our view is that it's not the API that has the amorphous, it's the finished products that we accuse and it ends up in their, it is created in the tabling process. But even, but more importantly, MSM did the comparison that the District Court was asking for. And so, and that's the overlaid spectrum in our blue brief on 34. So on 34, so the top two lines are, the black line is Dr. Matsker's test of their final tablets and the red line is the reference spectra for amorphous TBS. And Dr. Matsker marched through and said these two things have the same peaks, the same fingerprint peaks for amorphous TBS. What the District Court is saying is, oh, but you should have compared that to their reference spectra for amorphous TBS. Well, that's the blue line. So they made this comparison. And their, the blue line doesn't match the peaks for amorphous TBS. So if we had compared it, if we, you know, if you do compare it, it just bolsters our point that the amorphous TBS Dr. Matsker found matches amorphous TBS and isn't like a mistake for their, but you don't have to take my word for it because their expert on paragraph 187 goes through the characteristic peaks and explains this. He catalogs the peaks and says, and he concludes at the end of that paragraph that their reference spectra does not match the amorphous TBS reference spectra. Were you, did you present any evidence of amorphous TBS as it specifically driving demand? So, this Court's cases on Nexus, I get you're getting at Nexus, are flexible.  the, the, they, the way that they, what's driving demand is, is the product, the interest of generic, right? The interest of driving demand, the API in order to make their product as I was explaining earlier do the process they've chosen in their ANDA, they are going to infringe this patent. So, under this Court's decision in Natera, they can't, they can't compete with us in the market without infringing our patent. They can't make the thing that consumers want which is the drug without infringing our patent. And that is sufficient Nexus under this Court's case law. You want to say something? I think I will. Thank you, Your Honor. Okay. Mr. Mercosi. Yes, Judge. William Mercosi here for MSN. This Court can affirm the denial of injunction without reaching the claim construction issue precisely because it was a failure of proof. Novartis did not carry its burden of showing a likelihood that the product contains any amorphous TBS regardless of construction. What do you say to the chart that Ms. I'm sorry. Excuse me. What do you say to the chart Ms. Maynard showed us on page 34 of the rule sheet? Your Honor, I would point you to Dr. Steed's testimony at 6945 through 55 where Dr. Steed testified that if you take a reference spectrum for the 4MAS crystalline complex which everyone agrees is 100% crystalline. So, regardless of the dispute of whether 4MAS is a complex or not, their expert in Novartis agrees that 4MAS is 100% crystalline. Dr. Steed took that and compared it to all of the Raman maps that their expert Dr. Matsker took and he testified that every single region including what you just saw that he colored yellow and identified as amorphous is actually crystalline material every single region and that there was no amorphous found. Everything was consistent with and matched up with crystalline material and so for that reason alone the district court did not commit any error much less clear error. Dr. Steed presented incredible testimony that all of those regions that were allegedly amorphous are crystalline. But beyond that there is a lot more. Dr. McCreary testified that they didn't even have an amorphous TVS reference spectra to use here and I think that's important and we shouldn't lose sight of it. As Your Honor knows from this patent there is absolutely nothing in here about analytical testing data or reference standards on amorphous TVS. There's absolutely nothing. So when you have a mixture that everybody agrees is almost 100% crystalline you're looking for some minuscule amount lurking on the surface of a tablet somewhere you need an amorphous fingerprint or reference spectra so you know what you're looking at. Well how about the fact that the district court added the word predominantly which that's sort of a no-no isn't it? Well Your Honor that goes to the claim construction this court doesn't need to reach because if there is an amorphous TVS then it doesn't matter whether predominant is in the construction or not number one. Number two Novartis waived the right to challenge that.  if it's all crystalline then we don't need to worry about predominantly. Correct and the evidence showed we presented You're about to go to trial don't you think it's incumbent upon us to say something about the claim construction if we think it's in error? Well because I believe the evidence shows that it is all crystalline and it doesn't matter then no I don't believe you do but more fundamentally Your Honor they waived the right to challenge that here. Judge Andrew specifically asked Novartis' counsel for this preliminary injunction hearing and for an appeal of my ruling you agree to my claim construction they answered yes this court should not allow them to turn around Is that my record? That is at A9127 Judge Andrew asked quote this injunction hearing and if there is an appeal by your side the claim construction you accept question mark Novartis' counsel answered yes so far as we're concerned this court should not reach the claim construction it doesn't need  but again it doesn't matter because the evidence showed a failure of proof to show any amorphous in the product which is enough to affirm but to your point Your Honor on predominates all the district court did was rightly reject this nonsensical notion that an amorphous solid form of a compound means several molecules of TBS sitting around on the surface of a tablet that don't have long range order there's nothing in this intrinsic evidence whatsoever that that's what Novartis somehow invented as Your Honor pointed to the specification makes clear the solid state form of the compound comes in crystalline partially crystalline and amorphous everybody agrees crystalline and amorphous are distinct mutually exclusive forms and even if there could be overlap with partially crystalline all the judge did was make clear that the skilled person would need to distinguish those two and could easily do that by looking to predominantly amorphous the file history or the prosecution history is consistent Novartis made clear crystalline and amorphous are different they have different properties that only makes sense if the amorphous form predominates you can't say that several molecules of TBS on the surface of a tablet demonstrates new properties so even under the claim construction which you don't need to reach we submit that this report was correct on the law and there's no clear error on that physical mixture issue either again Dr. Steig testified credibly that form S is a crystalline complex not a mixture he looked at Raman he looked at IR he looked at so whether the claim construction stands or not the injunction should be affirmed as properly denied but I want to get back to the amorphous TBS point your honor and why the claim construction doesn't matter Judge Steig testified again the product is all crystalline according to the proper testing comparison but number two they didn't have an amorphous fingerprint if you're at this point our expert Dr. McCreary submitted credible expert testimony that what they have and what they're claiming to use as an amorphous reference factor is not actually a reference factor for amorphous TBS that was generated because the patent doesn't have one Novartis had to run out and try and generate one and make that glassy solid and example one our expert Dr. McCreary testified that their expert Dr. Park who claimed to have  this reference factor she didn't follow example one she used protocols not in there the reference factors it's not that they didn't present any evidence it's that they presented evidence that you think is not credible that the district court found not credible your honor and that's the whole point of the burdens on a preliminary injunction it's their burden alone to show likelihood of proving success on the merits MSN to the extent it has any burden at all if they put forward substantial evidence of non infringement the injunction needs to be denied that's the appropriate I'm sorry judge I didn't mean to  you if we present substantial evidence of non infringement which we did through Dr. Steed and Dr. McCreary that the products all crystalline and that they didn't even have an amorphous reference spectrum then that is more than enough to deny the  and that's what the court found the court found that Dr. Steed's testimony undermines their theory that there's any amorphous TBS and that Dr. Steed's testimony and valid criticism they were valid criticisms of the rest of the evidence that's enough to deny the injunction you're not on the market now even though the preliminary injunction was denied and that was due to our stay and the  well the existence of the other patent but all right the existence of the other patent which was partly upheld found not obvious it was the 659 invalid for written description correct and this court issued injunctions or stays in both appeals and you also have this DC circuit issue going that has been lifted and that's been lifted and the I presume that's on appeal but there's no stay correct the DC circuit has lifted the stays so MSN as we sit here today it has final approval it has prepared to launch the only thing holding it up are this court's injunctions you're arguing that we should not address claim construction right we don't have to correct you don't need to what's the danger of us doing that not addressing that and then it becoming a big issue at trial or you know the parties are here before this court after trial with the claim construction well I wouldn't say it's a a danger your honor because my friend has to prove amorphous TVS regardless at trial we don't believe they can do that so regardless of the construction we believe the evidence will show at trial that in fact MSN is not infringed because it doesn't have any amorphous TVS so construction won't be an issue at trial not based on our evidence and our position your honor because whether it predominates or not our position is as Dr. Steed and Dr. Mercury testified here there is no amorphous in the product at all regardless of construction so that's why the district court properly denied the injunction there was no clear error yes judge what about irreparable injury do you agree with your friend's analysis in terms of my question about how odd I think this case is because the product that we're dealing with here is not listed and connects with this patent I respectfully do not agree with my friend your honor we are talking about an amorphous solid form patent that no one practices Novartis doesn't commercialize it we're talking about an infringement theory that at best at best we're talking about a product or a tablet that is all crystalline with some tiny barely detectable amount of amorphous working on the surface of the tablet somewhere they have to show a nexus or a link between that feature of amorphous and the alleged infringement or some demand and I would submit but the product they're talking about in terms of comparing or arguing for irreparable injury is a product that's like the one you're going to launch right which is a hundred percent crystalline not amorphous and no one in their right mind I would submit to be candid would purchase MSN's product or any other product because there's a few molecules of amorphous TBS working on the surface of the tablet but one doesn't have to be selling the patented product to obtain damages from someone else's infringement we held in bank accordingly in right height many years ago and the question is whether the accused causes damages to what the patentee has said whether the patentee is damaged by someone infringing I would add to that your honor I know Novartis talks it down and they want to dismiss it they still have the burden Novartis alone to show some nexus between the alleged harm and the alleged infringement and that means showing that there is some evidence somewhere hiding that there is some demand that this trace amount of amorphous would somehow drive demand in this product and the record is bereft there is no evidence whatsoever of any nexus or connection between that amorphous feature and the product we're going to sell which we believe is 100% crystalline but even under their theory it's 99.999% crystalline with some trace amount that is no nexus we would submit but beyond that your honor on harm again the district court made fact findings which we believe are not clearly erroneous on the fact that the harms they allege are all quantifiable the district court credited our expert Dr. McDuff over theirs that things like lost sales market share profits price erosion are all quantifiable the court can affirm denial on that basis as well beyond that the district court held the other claims were speculative and that this is a 3 billion dollar product and if competitor wrongfully went on the market even for two months that's a lot of money and the market price for the product never comes up actually our expert disputed that your honor and the district court was entitled to credit that Dr. McDuff testified that the damages Novartis is asserting here are overstated but even to the extent that they're not they're still quantifiable with typical standard damages models that forecasting difficulties are overstated but you're saying we don't need to go there you do not need to go there your honor this injunction there's no proof of infringement exactly your honor but if the court wants to reach irreparable harm we believe there's no there's no clear error in any of those findings as well because damages are quantifiable we submit there's no evidence of any required nexus the other harms such as reduced investments are speculative haven't been proven and this whole idea of laying this generic jailbreak idea at MSN's feet because Novartis may or may not let other companies into the market that doesn't transform into harm none of those findings from the district court are error so before I relinquish the podium to my friend I would like again to request the balance of harms here we believe tips decidedly in favor of MSN again the district court's already found there will be no irreparable harm we submit Novartis has not shown a  likelihood of success on appeal that means we're left with MSN that is devoted substantial time money and effort to preparing to launch a lower priced generic medicine for patients final FDA approval is here the only thing holding that up are this court's injunctions we respectfully request those be lifted as soon as  and again that the court reach a decision on the merits in expedited fashion thank you counsel thank you thank         the pages he showed us you say preserved for appeal the  attorney for in context your honor what he's  is yes we're applying your construction now in front of you which is what always happens because just like we will in the trial next month if you all don't fix it which is we have to go forward in the  court and then we come up here he expressly preserved the right to  to the extent you think it's ambiguous there would be no reason to do that it makes no sense to read it that way this court often addresses claim construction when it's necessary we think you should do that on his evidence only on the presence of amorphous only Novartis did the testing Dr. Steed says at most that he's talking about the cyan maps the blue maps at most that shows that their final product is predominantly their form S API whatever that is it can't show and doesn't show a lack of amorphous Dr. Steed admits that all it shows is predominantly the lighter blue  and it paragraphs 186 to 187 Dr. Steed their expert goes through and catalogs those peaks in that figure in our brief and he concludes with the sentence simply put none of the peaks of their API actually match the  amorphous reference he tries out does that statement prove or show that there is amorphous TBS the presence of so when you put the evidence together what it does is show the report clearly in concluding that comparing our amorphous spectrum to their API would not support us because it shows what we found is not their API it is amorphous TBS and he is challenging the spectrum but the judge did not make that   concluded after hearing similar complaints that she had in fact made an amorphous glassy solid in accordance with example one and the findings in that previous trial are right on  record A35 34 so on the irreparable harm point this is not a piece in an iPhone this is a pharmaceutical product where we created this market they are using the ANDA process to try to launch their product to compete against our product our blockbuster product it will in the district court aired the irreparable harm analysis because he set aside harms that this court has recognized are irreparable including permanent price erosion lost market this is a growing market the evidence shows new indications are coming out new patients are being served we are the ones educating clinicians educating patients if they are allowed to  do   will cause harm that can't be put back in the bottle thank you your honor may I make one housekeeping request in response to his if you